# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 10-CR-2967-IEG |
|---|---|
| Plaintiff, | **ORDER GRANTING RESTITUTION** |
| vs. | |
| MARCO MANUEL LUIS (5), | |
| Defendant. | |

On October 26 and 30, 2012, the Court held a restitution hearing to determine whether and the amount of restitution owed by Defendant Marco Manuel Luis ("Defendant"). For the following reasons, the Court **ORDERS** restitution in the amount of $329,767 to CitiGroup and $615,935 to JP Morgan.

## BACKGROUND

Defendant was arrested on July 9, 2010, along with several co-defendants. [Doc.] Defendant ultimately pleaded guilty to counts 16 and 25 of the indictment for conspiracy to engage in monetary transactions under 18 U.S.C. §§ 1957, 1956(h). [Doc. No. 677, Judgment at 1.] On August 27, 2012, the Court sentenced Defendant to 48 months custody and ordered that he pay $545,024.90 in restitution. [Id. at 2, 5.] The Court ordered that restitution shall be paid immediately and "[j]ointly and severally with co-defendants, per the government's order regarding payment on restitution." [Id. at 5.] The Court also determined that Defendant did have the ability to pay interest, and then waived the interest requirement. [Id.]

- 1 -  10cr2967

Defendant filed a motion to amend/correct his sentence pursuant to Federal Rule of Criminal Procedure 35(a) on September 5, 2012, requesting that the Court (1) vacate the restitution order for further consideration in light of a more complete record; (2) impose a lower custodial sentence to eliminate sentencing disparity amongst co-defendants; and (3) impose a lower custodial sentence to correct for application of an improper burden of proof when imposing a six-level upward adjustment to the sentencing guidelines offense level. [Doc. No. 682-1, Def.'s P. & A. in Supp. of Mot. at 1.]

On September 10, the Court denied Defendant's request to vacate the restitution order in the judgment. [Doc. No. 690, Tr. of Restitution Hr'g at 9.] The Court also denied Defendant's motion to amend/correct his sentence on all grounds and found that there was no clear error committed by the Court. The Court found by clear and convincing evidence that the plus-six upward adjustment was appropriate and that Defendant knew that the proceeds used to purchase the two properties were derived from the drug business. [Id. at 42-44.] The Court also found that it does not have jurisdiction under Rule 35 to consider whether there was disparate treatment between co-defendants. [Id. at 44-45.]

Finally, the Court ordered that a restitution hearing be set for October 26, 2012 to determine the amount of restitution owed. [Id. at 50.] On October 26 and 30, 2012, the Court held an evidentiary hearing on restitution, and ordered supplemental briefing on the issues. On November 19, 2012, Defendant filed a supplemental brief. [Doc. No. 731.] On December 5, 2012, the Government filed its supplemental brief. [Doc. No. 741.] On December 13, 2012, Defendant filed his response. [Doc. No. 751.]

**DISCUSSION**

The Court must determine whether restitution is mandatory or discretionary, the victims, and the amount of restitution. [Doc. No. 690, Tr. of Restitution Hr'g at 48-49.]

**I.  Mandatory Restitution**

The Mandatory Victims Restitution Act ("MVRA") requires courts to order restitution to victims of certain criminal offenses. 18 U.S.C. § 3663A(c); see also U.S. v. Hunter, 618 F.3d 1062, 1063 (9th Cir. 2010). Restitution is mandatory if the conviction is for "an offense against

1 property [under Title 18]. . ., including any offense committed by fraud or deceit." 18 U.S.C. § 3663A(c)(1)(ii). Defendant argues that conspiracy to engage in monetary transactions involving criminally derived property valued at greater than $10,000 under 18 U.S.C. §§ 1957, 1956(h) is not a crime against property. [Doc. No. 682-1, Def.'s P. &. A. at 4.]

The Ninth Circuit has found that conspiracy to commit money laundering qualifies as an offense against property under the MVRA. United States v. Lazarenko, 624 F.3d 1247, 1249-50 (9th Cir. 2010). Also, the Seventh Circuit has specifically held that a conviction under 18 U.S.C. § 1957 is a money laundering crime. United States v. Polichemi, 219 F.3d 698, 706-07, 714 (7th Cir. 2000) (holding that the district court must follow the provisions of the MVRA and impose mandatory restitution because the defendant was convicted of money laundering, which is an offense of property as described in 18 U.S.C. § 3663A(c)(1)(A)(ii)). The Court finds the Seventh Circuit's reasoning to be persuasive, that conspiracy to engage in monetary transactions involving criminally derived property is a money laundering offense which qualifies as an offense against property under the MVRA. Therefore, the Court must order restitution.

**II.    Victims**

The MVRA requires a court to order restitution to each victim of an offense. A victim is broadly defined as:

> A person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

18 U.S.C. § 3663A(a)(2); see United States v. Gordon, 393 F.3d 1044, 1048 (9th Cir. 2004). The Government bears the burden of proving that a person or entity is a victim for purposes of restitution. United States v. Wakine, 543 F.3d 546, 556 (9th Cir. 2008).

The victims in this case are readily identifiable. The lender with respect to the first loan on the Palomar Mountain property is CitiMortgage. The lender with respect to the second loan is CitiBank. [Doc. No. 728, Tr. of Restitution Hr'g, Oct. 26 at 31-32.] Both entities are part of the umbrella organization, CitiGroup. [Id. at 12, 30.] Therefore, the Court finds that CitiGroup is a victim under the MVRA.

1  Regarding the Rancho Santa Fe property, although Washington Mutual originated the loans on this property, JP Morgan subsequently acquired the assets and liabilities of Washington Mutual, including the loans on the Rancho Santa Fe property, on September 25, 2008. [Doc. No. 721, <u>Tr. of Restitution Hr'g, Oct. 30</u> at 5-6.] Therefore, the Court finds that JP Morgan is a victim under the MVRA.

### III. Amount of Restitution

The Court must "order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A). "Restitution may compensate victims only for actual losses caused by the defendant's criminal conduct." <u>United States v. Peterson</u>, 538 F.3d 1064, 1075 (9th Cir. 2008) (internal quotation omitted). "A district court may not order restitution such that victims will receive an amount greater than their actual losses." <u>United States v. Rizk</u>, 660 F.3d 1125, 1137 (9th Cir. 2011).

"[I]n the case of an offense resulting in damage to or loss of a victim's property, the victim is entitled to return of the property, § 3663A(b)(1)(A), or if the return of the property is 'impossible, impracticable, or inadequate,' the victim is entitled to the value of the property less 'the value (as of the date the property is returned) of any part of the property that is returned,' § 3663A(b)(1)(B)." <u>United States v. Yeung</u>, 672 F.3d 594, 601 (9th Cir. 2012).

The Government bears the burden of proving the amount of the loss. 18 U.S.C. § 3664(e); <u>see</u> <u>Wakine</u>, 543 F.3d at 556. A dispute as to the proper amount of restitution must be resolved by the district court by a preponderance of the evidence. 18 U.S.C. § 3664(e); <u>see</u> <u>Wakine</u>, 543 F.3d at 556. "[T]he district court [may] utilize only evidence that possesses sufficient indicia of reliability to support its probable accuracy." <u>Id.</u> at 557 (quoting <u>United States v. Garcia-Sanchez</u>, 189 F.3d 1143, 1148-49 (9th Cir. 1999)) (internal quotation omitted).

In <u>Yeung</u>, the Ninth Circuit "developed some guidelines for calculating the restitution amount in a case involving a defendant's fraudulent scheme to obtain secured real estate loans from lenders" using the framework set forth in 18 U.S.C. § 3663A(b). <u>Yeung</u>, 672 F.3d at 601. "Generally, district courts . . . begin by determining the amount of the unpaid principal balance

due on the fraudulent loan, less the value of the real property collateral as of the date the direct lender took control of the property." Id. The "lender generally takes control on the date the lender either (1) receives the net proceeds from the sale of the collateral to a third party at the foreclosure sale, . . . or (2) takes title to the real estate collateral at the foreclosure sale, at which time "the new owner had the power to dispose of the property and receive compensation." Id. (quoting United States v. Smith, 944 F.2d 618, 625 (9th Cir. 1991). However, a lender's credit bid at a foreclosure sale may not reflect the value of the real property collateral in all circumstances. Therefore, a district court must provide explanation as to why the value of the collateral was equal to the victim's credit bid at the foreclosure sale. Yeung, 672 F.3d at 604.

Yeung also provides that losses may be reduced by "amounts recouped from resale of the loan. Yeung, 672 F.3d at 601. Additionally, the district court may include prejudgment interest, interest still due on the loan, and expenses associated with holding the real estate collateral that were incurred by the lender before it took title to the property to determine a victim's "actual losses." Id.

### A.    Palomar Mountain Property

CitiGroup made two loans on the Palomar Mountain Property. The Government provided a document from CitiMortgage which states that its loss is $217,909 on the first mortgage and $111,858 on the second mortgage in connection with the Palomar Mountain property. This document also indicates that CitiMortgage sold the first loan to a third party. [Doc. No. 709-2, Letter from CitiMortgage.]

#### 1.    First Loan

The original amount of the first mortgage was $448,000 and the current unpaid principal balance is $447,977. [Doc. No. 728, Tr. of Restitution Hr'g, Oct. 26 at 24.] This loan has been sold to Ranier Partners/Selene.[1] [Doc. No. 709-2; Doc. No. 728, Tr. of Restitution Hr'g, Oct. 26 at 23.] CitiGroup sold this loan for $230,068 (representing 51 cents for each dollar of unpaid principal balance) as part of an $88 million transaction on April 19, 2010. [Id. at 23-24.]

---

[1] Cynthia Swan, a business operations analyst at CitiMortgage, explained during her testimony that Ranier Partners is also known as Selene. [Doc. No. 728, Tr. of Restitution Hr'g, Oct. 26 at 13, 52-55.]

1 | Defendant first argues that CitiMortgage's sale of the loan "constitutes intervening
2 | circumstances that break any chain of liability to [Defendant], and/or make it impossible to
3 | determine an appropriate loss figure." [Doc. No. 731, Def.'s Supp. Br. at 5.] Defendant states that
4 | under 18 U.S.C. § 3663A(c)(3) "restitution shall not be ordered if determining the amount of a
5 | victim's loss is overly complicated or, of course, impossible." [Doc. No. 731, Def.'s Supp. Br. at
6 | 4.] However, Defendant's paraphrase of this subsection is misleading. This subsection states that
7 | mandatory restitution shall not apply to offenses against property "if the court finds, from the facts
8 | on the record, that– (A) the number of identifiable victims is so large as to make restitution
9 | impracticable; or (B) determining complex issues of fact related to the cause or amount of the
10 | victim's losses would complicate or prolong the sentencing process to a degree that the need to
11 | provide restitution to any victim is outweighed by the burden on the sentencing process." 18
12 | U.S.C. § 3663A(c)(3). Defendant makes no arguments in support of the application of §
13 | 3663A(c)(3). Further, upon its own review, the Court finds that determining the restitution amount
14 | does not complicate or prolong the sentencing process to a degree such that the need to provide
15 | restitution is outweighed by the burden on the sentencing process. See 18 U.S.C. § 3663A(c)(3).

Defendant also argues that CitiMortgage "is apparently claiming that it sold its right to the loan along with many other loans based on factors of which this Court is unaware, but which (according to the government's witness) had nothing to do with the value of the property." [Doc. No. 731, Def.'s Supp. Br. at 5.] Defendant argues that "the operative number should be how much the property was worth at the time CitiMortgage could have foreclosed and obtained possession of the property." [Id. at 5-6.] Defendant provides no case law in support of this contention. In fact, Defendant's argument is inconsistent with the framework the Ninth Circuit outlined in Yeung.

Yeung states that district courts must begin with the amount of unpaid principal balance, and reduce it by the value of the real property collateral as of the date the direct lender took control of the property. 672 F.3d at 601. The Ninth Circuit's framework in Yeung does not allow district courts to determine when a direct lender could have foreclosed and obtained possession of the property, and the value of the property at that time. Rather, in the case of resale, Yeung provides that if a direct lender resells a loan, its losses may be reduced by "amounts recouped from resale."

Id. Defendant further confuses the issue by attempting to bring in CitiMortgage's reasons for selling the loan, when <u>Yeung</u> provides in a straightforward manner that the direct lender's losses may be reduced by the amount of the resale of the loan. Id. Further, Defendant incorrectly asserts that CitiMortgage's sale of the loan breaks the chain of liability as to Defendant. Rather, the resale reduces the amount of CitiMortgage's loss. See id.

Pursuant to the <u>Yeung</u> framework, the Court finds that CitiMortgage recouped $230,068 from resale of the first loan to Ranieri Partners/Selene. [Doc. No. 709-2; Doc. No. 728, <u>Tr. of Restitution Hr'g, Oct. 26</u> at 24.] Therefore, subtracting this amount from the unpaid principal balance of $447,977, the Court finds CitiGroup's loss on the first loan to be $217,909.

### 2. Second Loan

The original amount of the second mortgage was $112,000 and the unpaid principal balance is $111,858. [Doc. No. 728, <u>Tr. of Restitution Hr'g, Oct. 26</u> at 25.] CitiMortgage charged off this loan on June 25, 2009; however, the loan still remains "outstanding." [<u>Id.</u>; Doc. No. 709-2, Letter from CitiMortgage.]

Under the <u>Yeung</u> framework to determine restitution, district courts must subtract the value of the real property collateral as of the date the direct lender took control of the property from the unpaid principal balance. 672 F.3d at 601. In the present case, CitiGroup never took control of the real property collateral. Accordingly, the Court finds that the loss to CitiGroup on the second loan is $111,858.

Regarding the Palomar Mountain property, the Court **ORDERS** Defendant to pay jointly and severally with co-defendants restitution in the amount of $329,767 to CitiGroup.

### B. Rancho Santa Fe Property

On the Rancho Santa Fe property, the first loan amount was $1,640,000 and the second loan amount was $204,750, for a total of $1,844,750. [Doc. No. 721, <u>Tr. of Hr'g, Oct. 30</u> at 7.] In his sentencing memoranda, Defendant states 27 monthly mortgage payments of $10,376.30 totaling $280,160.10 were made. [Doc. No. 655, <u>Sentencing Memoranda</u> at 8.] Defendant does not state who made the payments. Defendant neither presented this information regarding the monthly mortgage payments in his supplemental briefing, nor elicited testimony regarding the

payments during the restitution hearing.

Mr. Patrick Carr, Vice President and Controller for JP Morgan's Mortgage Banking Business, testified that the unpaid principal balance on the first loan in September 2011 was $1,640,000, because no principal payments were made. [Doc. No. 721, Tr. of Hr'g, Oct. 30 at 3-4, 17.] Mr. Carr did not state the amount of unpaid principal balance on the second loan. However, the Government's supplemental brief states that the loan amount on the second loan is $204,750, implying that all mortgage payments that were made were interest payments. [Doc. No. 741, Govt.'s Supp. Br. at 22.] Defendant does not specifically dispute the unpaid principal balance on the second loan in his briefing.

JP Morgan subsequently acquired the Rancho Santa Fe property at the foreclosure sale in September 2011 for $1,228,815. JP Morgan submitted this bid as a floor, and Mr. Carr testified that this value was based on exterior evaluations of the property, and was within the range of fair values for the property. [Doc. No. 721, Tr. of Hr'g, Oct. 30 at 12-16.] Mr. Carr testified that after JP Morgan acquired the property at the foreclosure sale, JP Morgan used real estate professionals to conduct an "RMV" to value the property for purposes of establishing a list price for it. Mr. Carr stated that an RMV is "like an appraisal," but it is not an official appraisal. [Id. at 16-17.] Through the RMV, JP Morgan determined the value of the property to be $1,175,000. [Id. at 17.] The property was subsequently sold to a third party in June 2012 for $1,130,000. [Id.]

The Government provided a document from JP Morgan which summarily states that its loss on the Rancho Santa Fe property is $774,627.08. [Doc. No. 709-1, Letter from Chase.] The Government argues for a restitution amount of $777,798, which is the foreclosure sale price subtracted from the total loan amount of $1,844,750. The Government also includes additional expenses, but does not credit Defendant for the monthly mortgage payments that were made. [Doc. No. 741, Govt.'s Supp. Br. at 22.]

Defendant argues that the loss to JP Morgan is unclear. Defendant argues that although JP Morgan acquired Washington Mutual for $1.9 billion, JP Morgan is unable to value the price it specifically paid for the loans on the Rancho Santa Fe property. [Doc. No. 731, Def.'s Supp. Br. at 7-9.] However, JP Morgan did not buy simply one loan or a package of loans from Washington

1 Mutual.  Rather, JP Morgan acquired all assets and liabilities of Washington Mutual.  [Doc. No.
2 721, Tr. of Hr'g, Oct. 30 at 5-6.]

3       The Ninth Circuit has recognized that restitution may be made to both direct and indirect
4 victims of the defendant's offense.  See, e.g. United States v. Baker, 25 F.3d 1452, 1455 (9th Cir.
5 1994); United States v. Smith, 944 F.2d 618, 621-22 (9th Cir. 1991).  In Smith, the defendant
6 defrauded a savings and loan into making him several high risk loans.  Another financial
7 institution subsequently purchased the assets and liabilities of the savings and loan.  The Federal
8 Savings and Loan Insurance Corporation ("FSLIC"), which had insured the savings and loan's
9 accounts, subsidized the purchase.  Id. at 620-22.  The Ninth Circuit affirmed the district court's
10 order that the defendant pay restitution to the FSLIC.  It reasoned that although the FSLIC was not
11 directly victimized by the defendant's actions, it did suffer injury as a result of his conduct because
12 it subsidized the purchase of the savings and loan.  Id. at 622.

13       In Baker, the Ninth Circuit again recognized that indirect victims may receive restitution
14 and cited Smith.  However, it held that the government did not meet its burden to show that a bank
15 that purchased the bank that made the original loan was a victim.  The Ninth Circuit held that
16 because the bank that had made the loans had written them off as uncollectible before it was
17 acquired by the purchaser bank, the government could not show that the purchaser bank had
18 sustained any loss.  Baker, 25 F.3d at 1455.  In the present case, unlike in Baker, Washington
19 Mutual did not write off the loans on the Palomar Mountain property.  Rather, mortgage payments
20 were made on the first loan until August 2009, which was *after* JP Morgan had acquired the
21 Washington Mutual and the loans on September 25, 2008.  [Doc. No. 721, Tr. of Hr'g, Oct. 30 at
22 5-6, 11.]  JP Morgan charged off the second loan and removed it from its books in March 2010,
23 also after it had acquired Washington Mutual.  [Id. at 10-11.]  Therefore, the Court will proceed
24 with the Yeung framework outlined by the Ninth Circuit to determine the proper amount of
25 restitution owed to JP Morgan.

26       The Court finds that the unpaid principal balance on the first loan is $1,640,000.  Based on
27 the Government's supplemental brief, and Defendant's lack of objection to the amount, the Court
28 finds that the unpaid principal balance on the second loan is $204,750.  Therefore, the total unpaid

1 | principal balance is $1,844,750.[2]

2 | The Court then finds that the value of the Rancho Santa Fe property on the date JP Morgan took control of the property, which is the date that it took title to the property at the foreclosure sale, was $1,228,815 which is the JP Morgan's bid and the foreclosure sale price. See Yeung, 672 F.3d at 601, 604. The Court uses the JP Morgan's bid at the foreclosure sale rather than the RMV because JP Morgan's bid at the foreclosure sale was within the range of potential fair values of the property. Mr. Carr testified that this value was something that was "close to" the fair value of the property. [Doc. No. 721, Tr. of Hr'g, Oct. 30 at 13.] Further, the RMV was not an official appraisal. [Id. at 17.] Therefore, subtracting the value of the property on the date JP Morgan took control from the unpaid principal balance, the Court finds that the loss to JP Morgan is $615,935. Accordingly, the Court **ORDERS** Defendant to pay jointly and severally with co-defendants restitution to JP Morgan in the amount of $615,935.

## CONCLUSION

For the reasons above, the Court **ORDERS** Defendant to pay jointly and severally with co-defendants restitution in the amount of $329,767 to CitiGroup and $615,935 to JP Morgan.

**IT IS SO ORDERED.**

**DATED:** January 14, 2013

*Irma E. Gonzalez*
**IRMA E. GONZALEZ**
**United States District Judge**

---

[2] The Court does not credit Defendant with the 27 monthly mortgage payments of $10,376.30 totaling $280,160.10 that were made on the loans because they were not principal payments, but interest payments. See Yeung, 672 F.3d at 601. [Doc. No. 655, Sentencing Memoranda at 8.] The Court also does not credit these payments because the Court is not including the amount of interest still due on the loans in the restitution award, even though the Ninth Circuit permits courts to include interest still due on the loan. Yeung, 672 F.3d at 601.